Frank O'BANNON, Governor of the State Of Indiana, John Hamilton, Secretary, Indiana Family and Social Services Administration, Melanie Bella, Assistant Secretary, Office of Medicaid Policy And Planning, Janet Corson, Director, Division of Mental Health, Steve Cook, Director, Division of Disability, Aging, and Rehabilitative Services, Appellants–Defendants,

v.

Richard SCHINDLER, by his Sister and Guardian, Carolyn Ernstberger, Nancy Egner, by her Mother and Guardian Frances Egner, Frank Migliano, by his Parents and Health Care Representatives Frank and Joyce Migliano, Gary Tuttle, by his Parent and Guardian Ruth Tuttle, Amanda Brewer, by Her Guardian Miriam Ogan, Philip Pratt by his Parents and Guardians James and Barbara Pratt, and Muscatatuck Association for Retarded Citizens, Appellees–Plaintiffs.

No. 40A01–0206–CV–200.

Court of Appeals of Indiana.

Sept. 26, 2003.

Rehearing Denied Nov. 10, 2003 and Dec. 11, 2003.

Arend J. Abel, Sandra L. Blevins, Indianapolis, IN, Attorneys for Appellants.

David F. McNamar, Indianapolis, IN, Donald B. Kite, Carmel, IN, Attorneys for Appellees.

## OPINION

HOFFMAN, Senior Judge.

Defendants–Appellants, various officials of the executive branch of the State of Indiana (collectively, "the State"), appeal the trial court's grant of the preliminary injunction requested by a class consisting of current and former patients of Muscatatuck State Development Center. We affirm in part and reverse in part.

The State raises five issues for our review, which we consolidate and restate as:

I.  Whether the trial court's grant of an injunction is supported by its findings of fact and conclusions of law.

II. Whether the portion of the injunction relating to staffing Muscatatuck State Development Center violates the Indiana Constitution's separation of powers clause.

III. Whether the portion of the injunction requiring Muscatatuck State Development Center to allow

transferred or discharged residents to return to the Center is appropriate.

IV. Whether the portion of the injunction purporting to prevent "pressuring" of parents and guardians is appropriate.

On or about July 27, 1998, the Attorney General of the United States, by and through the Acting Assistant Attorney General, Civil Rights Division, notified the Governor of Indiana of her intention to "investigate allegations of unconstitutional and unlawful conditions" at Muscatatuck State Development Center ("MSDC") and Fort Wayne Development Center ("FWDC"). Appellant's App. at 36. Following an investigation, the Attorney General informed Indiana officials of her belief that persons residing in or confined in the two state institutions were "being subjected to conditions that deprived them of rights, privileges and immunities secured by the Constitution of the United States and federal statute." *Id.*

On January 18, 2001, the State entered into a "Stipulation of Amended Settlement Agreement" with the United States that declared Indiana's "willingness to continue to improve conditions implicating the constitutional and federal statutory rights of SDC residents." Appellant's App. at 38. As part of the settlement, the State provided a plan that detailed methods by which it would "improve conditions affecting the constitutional and federal statutory rights of the clients at the SDCs" and that expressed the goal of providing for improvements "that go beyond the constitutional minimum." Appellant's App. at 39.

In its plan arising from the federal government's investigation, the State acknowledged that it "has an obligation under federal law to provide treatment to the SDCs' residents in the most integrated setting appropriate to the residents'

needs." Appellant's App. at 68. Accordingly, the plan provides that "each SDC will be individually, professionally evaluated to determine the resident's appropriateness for community-based placement...." *Id.* at 69. The plan stated that such community placements "shall be designed to provide safe and humane environments and shall be adequate to meet individualized needs." *Id.*

In April or May of 2001, officials of the State of Indiana announced their intention to close MSDC in 2003. The officials stated that all current MSDC patients would be transferred to other types of facilities.

Several parents and guardians of MSDC patients examined the alternative facilities and determined that the facilities did not provide services comparable to those provided by MSDC. Accordingly, the group of parents and guardians filed suit in the name of MSDC patients (the "Class"). The suit was certified as a class action in 2002, with the Class consisting of those patients living at MSDC and those former MSDC patients who had been discharged and desired to return.

In the amended complaint, the Class members are characterized as "medically frail" and "at risk" individuals. App. at 18. The amended complaint alleged that "large institutions" such as MSDC are currently the only appropriate residences for the Class members. *Id.* The complaint also alleged that the State has failed to develop or identify any community-based facilities that provide suitable care for the Class members. The complaint further alleged that members of the Class who had moved from MSDC were residing in "inadequate facilities as a result of [the State's] *'rush to closure.'* " *Id.* at 21 (emphasis in original).

The amended complaint stated that the Class sought redress for "the deprivation of civil rights secured by the provisions of

I.C. 12–11–1.1–1, I.C. 12–24–13–6, and I.C. 12–11–2.1–1(c)." *Id.* at 18. The complaint emphasized that the Class was seeking redress "only under State law, and not under Federal law." *Id.* The Class asked the trial court to grant an injunction prohibiting the State from closing MSDC until the State provides "adequate and appropriate facilities." *Id.* at 22.

After a hearing, the trial court granted preliminary injunctive relief. In so doing, the trial court entered findings of fact and conclusions of law. Among other things, the trial court found that there was no evidence to show that any existing alternative facilities "provide the same level of care and staffing as MSDC." (Finding of Fact # 12; App. at 10). The trial court also found that it was unable to conclude "that these alternative facilities can, at present, provide the care needed by [the Class]." (Finding of Fact # 16; App. at 11). The trial court further found that the injunction was necessary to maintain the status quo until such time as appropriate facilities are in existence. (Finding of Fact # 19; App. at 11). Accordingly, the trial court enjoined the State from "removing, transferring or discharging any [Class member] from MSDC" absent written consent of the guardian of record of the patient, "which written consent explicitly states that the guardian has received notice of this Preliminary Injunction, and after such advise [sic], decides that the best interests of their [sic] ward is to transfer to another facility." App. at 13. The trial court also enjoined the State from (1) "restricting in any manner the return to MSDC of any former patient that was transferred or discharged and now wants to return to MSDC," (2) "pressuring in any way any parent or guardian to transfer their son, daughter or ward into transferring from MSDC to another facility," and (3) "reducing or removing existing staffing at MSDC, unless the con-

duct of the employee violates applicable statutes, regulations, or rules of the facility." App. at 13–14.

The State now appeals.

## I.

In determining whether a trial court abused its discretion in granting a preliminary injunction, we will review the findings of fact to ascertain whether they are supported by the evidence and whether they are sufficient to support the judgment. *Goebel v. Blocks and Marbles Brand Toys, Inc.*, 568 N.E.2d 552, 553 (Ind.Ct.App.1991). We will not set aside the findings unless they are clearly erroneous. *Id.* We may not affirm the trial court's judgment on any ground which the evidence supports. *Id.* Instead, we must determine whether the special findings are adequate to support the trial court's decision. *Id.* Whether special findings are adequate depends upon whether they are sufficient to disclose a valid basis under the issues for the legal result reached in the judgment. *Willett v. Clark*, 542 N.E.2d 1354, 1357 (Ind.Ct.App.1989).

The State contends that the trial court's grant of a preliminary injunction is not supported by adequate findings. Specifically, the State contends that the trial court failed to identify which of the Class members' statutory rights were violated by the State's current practices.

A review of the trial court's findings discloses that the trial court referred to Ind.Code § 12–24–5–3, Article 9, § 1 of the Indiana Constitution, and Ind.Code § 12–27–1–1 *et seq.* The first statutory reference sets forth the rights of current patients admitted to MSDC, as it provides that an Indiana resident admitted to a state institution is entitled to appropriate care in the institution. The constitutional reference refers to the Legislature's duty

to provide support for institutions that care for those who are mentally and physically challenged. The aforementioned references provide the milieu in which the particular rights set forth in Ind.Code § 12–27–1–1 *et seq.* are found. Title 12 pertains to "Human Services," and Article 27, denominated as "Rights of Individuals Being Treated for Mental Illness or Developmental Disabilities," sets forth the statutory rights of the Class members. Specifically, Chapter 2 of the Article states that a patient is entitled to mental health services or developmental training that is in accord with standards of professional practice, appropriate to the patient's needs, and designed to afford a reasonable opportunity to improve the patient's condition. Ind. Code § 12–27–2–1(1). Chapter 2 further specifies that a patient is entitled to "humane care and protection from harm." Ind. Code § 12–27–2–1(2).

The trial court found that the Class members are "classified as 'profoundly retarded' as evidenced by the data in their medical charts." (Finding of Fact # 8; Appellant's App. at 10). The trial court also found that individual Class members have severe medical conditions that place them medically " 'at risk' requiring substantial medical care and medications." (Finding of Fact # 7; Appellant's App. at 10). Some of the Class members have "severe behavioral problems that can cause substantial injury to themselves, other persons or property. Some are blind and/or deaf, and many cannot ambulate or communicate." *Id.* The trial court further found that certain individual Class members needed the care and professional staffing levels provided at MSDC or a similarly staffed facility. (Finding of Fact # 9; Appellant's App. at 10). In addition, the trial court found that the Class members would suffer extensive harm if they do not receive the level and quality of care currently provided at MSDC. (Finding of

Fact # 11; Appellant's App. at 10). Significantly, the court found that although a new type of alternative facility is being developed, the alternative facilities now available are incapable of providing "the care needed" by the Class members. (Findings of Fact # 16–# 19; Appellant's App. at 11). In short, the evidence is sufficient to show that the State's transfer of a number of the Class members to alternative facilities that are currently available deprives those particular Class members of their Chapter 2 rights of treatment appropriate to the Class members' needs, humane care, and protection from harm.

Furthermore, the trial court's findings are sufficient to support its conclusion (1) that irreparable harm to the Class members would occur if the injunction did not prohibit the State from transferring the Class members to the alternative facilities presently available; (2) that the harm suffered by the Class members is outweighed by any possible injury to the State; (3) that the Class members will most likely succeed on the merits; and (4) that public policy is best served by the grant of the injunction. Although the trial court could have been more explicit, we cannot conclude that the trial court failed to identify the rights violated as those arising under Chapter 2 of Title 27. Furthermore, we cannot conclude that the trial court failed to make findings that support its conclusion that the State has generally failed to protect those rights.

The State cites *K.W. v. Logansport State Hospital,* 660 N.E.2d 609, 612 (Ind. Ct.App.1996) as support for its contention that the trial court erroneously placed the burden upon the State to show that the alternative facilities are presently capable of providing appropriate treatment to the Class members. *K.W.,* however, addresses the question of appropriate or effective

treatment in a recommitment hearing under the specific provisions of Ind.Code § 12–26–15. The case has no application here.

## II.

■ The State contends that the trial court erred in including a provision in the injunction that prohibits the State from "[r]educing or removing existing staffing levels at [MSDC], unless the conduct of the employee violates applicable statutes, regulations, or rules of the facility." Appellant's App. at 14. Specifically, the State contends that this provision violates the separation of powers clause in the Indiana Constitution and is in direct conflict with this court's holding in *Logansport State Hospital v. W.S.*, 655 N.E.2d 588 (Ind.Ct. App.1995).

Article III, § 1 of the Indiana Constitution provides that the powers of Indiana government are divided into the legislative, executive, and judicial departments and that "no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in this Constitution expressly provided." In *Logansport*, we recognized that the non-delegable duty to provide for individuals who have a mental illness is given to the legislative department. *Logansport*, 655 N.E.2d at 589 (citing Article IX, § 1 of the Indiana Constitution). We stated that the trial court's attempt to order increased staffing at an institution was "essentially appropriating state funds and deciding how they should be spent." *Id.* We further stated that this appropriation of funds is the "right and responsibility ... for the General Assembly alone." *Id.* at 590. We noted that "[t]he people have imposed the duty upon the legislative department, and to the people it must give account, and not to the courts." *Id.* (quoting *Hovey v. State ex rel. Carson*, 119 Ind. 395, 21 N.E. 21 (1889)). We held that the trial court overstepped its authority in ordering an institution to hire more medical staff because "it is the express duty of the Indiana General Assembly and not of the courts to provide for the staffing and maintenance of facilities such as [F.W.D.C., an institution similar to MSDC]." *Id.*

In the present case, the Class contends that the difference between the trial court's order and the order in *Logansport* is significant. Thus, the Class concludes that *Logansport* and Article III, § 1 of the Indiana Constitution do not apply in this case. The Class fails, however, to show that forcing appropriation of funds to maintain staffing levels is constitutionally distinguishable from forcing appropriation of funds to increase staffing levels. As we held in *Logansport*, staffing decisions are the responsibility of the legislative department and that department answers to the citizens of this state, not to Indiana courts. We conclude that the trial court's provision regarding the maintenance of staffing levels at MSDC violates the separation of powers clause of our Constitution.

## III.

■ The State contends that the trial court erred in including a provision in the injunction prohibiting the State from "[r]estricting in any manner the return to [MSDC] of any former patient that was transferred or discharged and now wants to return to [MSDC]." Appellant's App. at 13. The State premises its contention on its belief that the Class did not request this relief, that the return of former patients is an "individualized" determination, and that the challenged provision exceeds the trial court's expressed intention to maintain the status quo. Appellant's Reply Brief at 14.

With regard to the State's belief that the Class did not request relief for those former patients who had already been transferred or released from MSDC, we note that these patients were included as members of the class. Furthermore, although the Class did not specifically ask that the former patients be allowed to return to MSDC, it did ask for all other relief that was "just and proper." Appellant's App. at 22. Given the inadequacy of the alternative facilities available at the time the injunction was issued, the only just and proper relief is to allow former patients to return to the facility which will provide them with the level of care mandated by Indiana statute.

With regard to the State's belief that the return of former patients is an "individualized determination," we note that under the evidence presented at the injunction hearing the trial court concluded that there are no alternative facilities that can provide appropriate care to Class members. There is no individualized determination that needs to be made under the evidence that was before the trial court.

Additionally, with regard to the State's concerns about maintenance of the status quo, we conclude that the State is defining the term "status quo" much too narrowly. In this case, the "status quo" is the appropriate treatment that all of the Class members were given before the State began transfers to inadequate alternative facilities. In order to maintain this status, transferred or discharged Class members must have the right to return to the only facility that provides them with appropriate treatment under Indiana statutes.

## IV.

■ The State contends that the trial court erred in including a provision in the injunction that prohibits the State from "[p]ressuring in any way any parent or guardian to transfer their son, daughter or ward into transferring from [MSDC] to another facility." Appellant's App. at 14. Specifically, the State contends that the provision is too vague because it could be interpreted to preclude activities that are legal. In support of this contention, the State cites *Crawley v. Oak Bend Estates Homeowners Association*, 753 N.E.2d 740 (Ind.Ct.App.2001) and *Blair v. Anderson*, 570 N.E.2d 1337 (Ind.Ct.App.1991).

The Class counters that the term "pressuring" or "pressure" is defined as "to force, as by overpowering influence or persuasion." Appellee's App. at 35. The Class argues that the provision simply prohibits the State from "using scare tactics or threats of sudden closure" in communicating with parents or guardians about transfers to alternative facilities.

In the present case, it is clear that the State is in the process of closing MSDC and that it will be necessary at some point to transfer Class members to appropriate alternative facilities. Thus, the State will have to communicate with the parents and guardians of the Class members in an effort to facilitate appropriate transfers. It doesn't take an active imagination to determine that these necessary communications may be considered as "pressuring" by parents or guardians who are upset about the closing of MSDC. The injunction, which does not prohibit only "scare tactics or threats of sudden closure," but instead prohibits "[p]ressuring in any way," is vague because it may be construed to prohibit necessary communications that will be perceived by the hearer hostile to the closing of MSDC as "pressuring." Accordingly, the trial court erred in including this provision in its injunction.

**342**

Given the evidence that the alternative treatment facilities were incapable of giving appropriate treatment at the time of the injunction hearing, the trial court did not abuse its discretion in enjoining the State from removing, transferring, or discharging any Class member from their current residence at MSDC. Furthermore, the trial court did not abuse its discretion in enjoining the State from restricting the return of former patients to MSDC. However, the trial court's provisions regarding staffing and "pressuring" of parents or guardians are clearly erroneous. On remand, they shall be stricken.[1]

Affirmed in part. Reversed and remanded in part.

KIRSCH, J., and NAJAM, J., concur.

---

1. We note that subsequent to the issuance of the trial court's injunction, the legislature has passed two versions of statutes addressing the closure of MSDC. In both versions, the legislature prohibited the closure of MSDC until the residents of MSDC are "placed in adequate placements that: (A) fully meet the capabilities and needs of the residents; and (B) are located sufficiently close to the families of residents so that the families may maintain the same level of contact with the residents that the families had before the residents were transferred from [MSDC]." Ind.Code § 12–24–1–10(g)(2). The statute also requires development of a plan "for moving residents to alternative placements that protects the physi-

cal health, mental health, and safety of the residents." Ind.Code § 12–24–1–10(e)(2).

We further note that the State has argued that a portion of the injunction providing that the State obtain written permission of a guardian before the transfer of a Class member is mooted by the subsequent passage of Ind.Code § 12–24–1–10(g). In making its argument, the State points to a subsection of the statute which provided that residents may not be transferred until the residents are placed in transfers that "are acceptable to the individual or the individual's representative." This subsection has been deleted from the current version of the passage. Thus, the State's argument is moot.