Ivan **PARAMANANDAM** d/b/a Scorpion Consultants, Mall88.Com, and Scaleables cales.Com, and Michael Miner, Appellants–Defendants,

v.

Victoria **HERRMANN** d/b/a Dynamicsca les.Com, Appellee–Plaintiff.

No. 84A01–0408–CV–345.

Court of Appeals of Indiana.

May 24, 2005.

Jeremy Eglen, Fishers, IN, Attorney for Appellants.

Eric A. Frey, Anderson Frey & Nichols, Terre Haute, IN, Attorney for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Ivan Paramanandam ("Ivan") and Michael Miner ("Michael") d/b/a Scorpion Consultants, Mall88.com, and Scaleable Scales.com (collectively, "Appellants") appeal the trial court's grant of a preliminary injunction in favor of Victoria Herrmann ("Victoria") d/b/a DynamicS cales.com ("Dynamic Scales"). Appellants also challenge the sufficiency of Dynamic Scales' bond. We reverse.

### Issue

Appellants raise three issues, only one of which we must address: whether the trial court abused its discretion in granting a preliminary injunction in favor of Dynamic Scales for Appellants' alleged misappropriation of trade secrets.

### Facts and Procedural History [1]

In October 2002, Victoria established Dynamic Scales as a sole proprietorship

---

1. Dynamic Scales contends that Appellants "have failed to set forth the evidence most favorable to the order granting the prelimi- nary injunction" in their statement of facts as required by Indiana Appellate Rule 46(A)(6)(b). Appellee's Br. at 3. We agree.

with the assistance of her husband, John, who had experience in the scales marketing business. The Herrmanns were acquainted with Ivan, who had worked in the scales business with John's father. In November 2002, Victoria hired Ivan's consulting firm, Scorpion Consultants, to develop a website for Dynamic Scales' online retail store.

At Ivan's request, the Herrmanns gave him the password to make changes to Dynamic Scales' website, and he used his own copy of Frontpage software to design the website. Ivan contacted the scale manufacturers for which Dynamic Scales was a distributor and secured permission to display product photos and information on the website. With John's assistance, Ivan registered approximately four hundred domain names,[2] among them Mall88.com, and developed six thousand corresponding keywords, all of which would direct potential customers to Dynamic Scales' online store via internet search engines such as Yahoo! or Google. Customers would call Dynamic Scales' toll-free number to receive a quote; in the event of a sale, the manufacturer would ship the scale directly to the customer. Eventually, Dynamic Scales developed the largest online retail store in the scale industry.

In October 2003, Ivan suffered a heart attack. After he recovered, he told Victoria that he wanted to work from home for a higher salary. When Victoria refused, Ivan told her that "he wanted to get out of the scale business." Tr. vol. I at 37. Ivan and the Herrmanns terminated their business relationship in December 2003. At the end of December, the Herrmanns learned that Ivan had started his own online retail store, Scaleable Scales.com. Aside from the company information and logo on its homepage, Ivan's website was practically identical in both content and appearance to Dynamic Scales' website. The Herrmanns discovered that Ivan had appropriated the Mall88.com domain name for his own business. They also discovered that internet searches conducted using Dynamic Scales' name or toll-free number as search terms would yield results that listed Dynamic Scales' company information but were actually linked to Ivan's website at Mall88.com.

On February 18, 2004, Dynamic Scales filed suit against Ivan and Michael, who allegedly operated Scorpion Consultants, Mall88.com, and Scaleable Scales.com in partnership with Ivan. Dynamic Scales' complaint alleged that "[t]he information contained on [its] website" and "domain names developed, created, and maintained by and for Dynamic Scales" were trade secrets under the Uniform Trade Secrets Act ("UTSA")[3] and that Appellants had misappropriated those secrets. Appellants' App. at 8.[4] Dynamic Scales request-

---

Also, we note that Appellants' brief contains facts not "relevant to the issues presented for review" in contravention of Appellate Rule 46(A)(5) and that their statement of the case is inappropriately rife with argument. *See Schaefer v. Kumar*, 804 N.E.2d 184, 196 n. 13 (Ind.Ct.App.2004), *trans. denied.*

**2.** A domain name is the textual address of a particular website. *See Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 595 (Ind.2001). "[R]egistrants frequently select domain names that identify the registrant's name or interest, for the same reasons businesses and individu-

als have historically sought telephone numbers that were easy to remember." *Id.* We note that *Felsher* offers an excellent primer on the internet and misappropriation issues.

**3.** Ind.Code §§ 24–2–3–1 to –8.

**4.** In the second count of the complaint, Dynamic Scales seeks recovery under the Indiana Crime Victim Relief Act, presumably for conversion. *See* Ind.Code § 34–24–3–1 (authorizing civil action for person who "suffers a pecuniary loss"); Appellee's Br. at 8 ("[Ivan] had no right or permission to convert

ed that Appellants be enjoined "from actual and threatened misappropriation of the trade secrets pursuant to the UTSA for such period of time as the Court may determine to be necessary for the protection of the trade secrets[.]" *Id.* at 10.

On March 1, 2004, Michael moved for dismissal pursuant to Indiana Trial Rule 12(B)(6), asserting that he "[was] not and has never been an employee, partner, or owner of Scorpion Consultants, Mall88.com, or Scaleable Scales.com" and that he "receive[d] no monies, profits, or any other benefit" from these entities. *Id.* at 19. The trial court denied Michael's motion.

On April 16 and 22, 2004, the trial court held a preliminary injunction hearing. On May 10, 2004, the court entered the following order, which closely tracks the language of Dynamic Scales' complaint:

3. Dynamic Scales hired [Ivan], doing business as Scorpion Consultants ( [ ]hereafter "Ivan"), as an independent contractor to facilitate the marketing of high quality scales through the development and maintenance of Dynamic Scale's [sic] online retail store and website located at *www.dynamic- scales.com* and approximately 400 other domain names on the World Wide Web. Dynamic Scales' website and domain names include content, images, and trade dress which are proprietary to and/or licensed to Dynamic Scales and other trade names and websites maintained by Dynamic Scales. Ivan held himself out to possess expertise in the development, creation and maintenance of websites and was engaged by Dynamic Scales to provide services as an independent contractor in the development, creation and maintenance of its website, domain names and retail online store operation.

4. Dynamic Scales expended considerable time, effort and expense to develop, create and maintain the website and domain names necessary to establish its various trade names and retail store as a major scale distributor in the online scales business. Ivan was paid more than $16,000 for his services in providing the expert assistance necessary to assist Dynamic Scales in this very detailed and comprehensive work.

5. The website information which was developed, created and maintained as the retail online store information was unique in the scale industry and could not be duplicated without a great deal of effort, time, expense and consent or permission being obtained from Dynamic Scales and from all of its suppliers, whose detailed customer information, specifications, photographs and other marketing information was contained on the website and domain names established by Dynamic Scales.

6. The website and domain names developed, created and maintained by and for Dynamic Scales were proprietary to its business, designed exclusively for it, and maintained by it as confidential business information which it refused to provide the details of to interested competitors. Ivan was provided passwords, key words and other proprietary information and made aware of these facts and agreed with Dynamic Scales that he would not provide similar services to other online scale businesses.

7. The information developed by Ivan and Dynamic Scales which was also contained on the above-described website and domain names constituted trade secrets under the Uniform Trade Se-

the business property of Dynamic Scales to his own business."). That claim is not at issue in this appeal.

crets Act, I.C. § 24–2–3–2 et seq., (the "UTSA") in that they constituted information or a program, device, or process that derived independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure and which were the subject of efforts that were reasonable under the circumstances to maintain their secrecy, including the use of passwords, computer log-in and secrecy systems and in Dynamic Scales' refusal to share the information with competitors.

8. Ivan knew from the time he was engaged to assist Dynamic Scales in the development, creation and maintenance of the website and domain names that the information contained in them was proprietary and unique to plaintiff and that he was afforded access to the information and was able [to] use passwords and other secrecy information in order to assist Dynamic Scales in the development of its website, domain names and online business. Ivan also knew that disclosure of this information to others or use by himself or other persons without Dynamic Scales' express or implied consent would be harmful to plaintiff's business interests and that the information was acquired by him under circumstances giving rise to a duty to maintain its secrecy and limit its use and availability to competitors. Ivan owed a duty to maintain such secrecy and to limit such use.

9. In December, 2003 Ivan terminated his relationship with Dynamic Scales and within a few days thereafter began to operate a partnership business known as *www.scal[e]ab lescales.com, www. mall88.com* and Scorpion Consultants with [Miner] (hereinafter collectively referred to as "Scorpion") which duplicat-

ed and copied nearly every phase and detail of the plaintiff's trade secrets/website/information. Scorpion also used the confidential information Ivan had acquired from plaintiff to appropriate Dynamic Scales' domain names and web-directing information and redirected such information so that customers would access his sites and domain names and not [ ] those of Dynamic Scales. In addition, Scorpion engaged in actions which intentionally altered and damaged Dynamic Scales' website and domain names so that they were [sic] be less able to compete with Scorpion. In carrying out this course of conduct, Scorpion misappropriated Dynamic Scales' trade secrets under the UTSA.

10. Scorpion is conducting a retail online scale sales and distribution virtually identical to Dynamic Scales' with all of its trade secrets and trade information at their fingertips. Such actions have caused and will cause substantial and irreparable damage to Dynamic Scales' business interests and should be enjoined by the Court under I.C. § 24–2–3–3 for such period of time as is necessary in order to eliminate the commercial advantage that Scorpion has obtained by misappropriating Dynamic Scales' trade secrets.

11. The Court finds that the defendants' conduct constitutes actual and/or threatened misappropriation of trade secrets under I.C. § 24–2–3–3 and that an injunction shall issue until the trade secrets have ceased to exist or for a period of two years, which the Court finds to be a reasonable period of time to eliminate the commercial advantage obtained by the misappropriation of the trade secrets by the defendants.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that the defendants be and hereby are enjoined

until further order of this Court from using or appropriating any of the information copied from plaintiff's website, domain names, trade names, content, images, key words and other information supplied by the plaintiff to the defendants or received by the defendants or Ivan during his period of employment by the plaintiff;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the defendants shall, within twenty (20) days of this order, delete and remove from all defendants' websites, software and other images or content maintained by them on the World Wide Web or any other location, all information relating to plaintiff's websites, domain names, trade names, content, images, key words and all information supplied by the plaintiff to the defendants or received by the defendants or either of them.

Appellants' App. at 28–31.

On May 12, 2004, Appellants filed a motion for issuance of security pursuant to Indiana Trial Rule 65(C) in which they requested a $60,000 bond "for fees, expenses, and lost profits." *Id.* at 32. On May 21, 2004, the trial court entered an order in which it found that Appellants had "failed to introduce any evidence at the hearings ... of costs and damages they may incur if wrongfully enjoined" and set Dynamic Scales' bond at $1,000. *Id.* at 49. Appellants subsequently filed a motion to reconsider amount of security and a motion to correct error. On June 28, 2004, the trial court denied these motions. This appeal ensued.

### Discussion and Decision

### I. Preliminary Injunction

 Appellants contend that the trial court improperly granted the preliminary injunction in favor of Dynamic Scales.

Our standard of review in such cases is well settled:

> The issuance of a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion. When determining whether or not to grant a preliminary injunction, the trial court is required to make special findings of fact and state its conclusions thereon. Ind. Trial Rule 52(A). When findings and conclusions are made, the reviewing court must determine if the trial court's findings support the judgment. The trial court's judgment will be reversed only when clearly erroneous. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment.

> The trial court's discretion to grant or deny preliminary injunctive relief is measured by several factors: (1) whether the plaintiff's remedies at law are inadequate thus causing irreparable harm pending the resolution of the substantive action if the injunction does not issue, (2) whether the plaintiff has demonstrated at least a reasonable likelihood of success at trial by establishing a prima facie case, (3) whether the threatened injury to the plaintiff outweighs the threatened harm the grant of the injunction may inflict on the defendant, and (4) whether, by the grant of the preliminary injunction, the public interest would be disserved. In order to grant a preliminary injunction, the moving party has the burden of showing, by a preponderance of the evidence, that the facts and circumstances entitle him to injunctive relief. The power to issue a preliminary injunction should be used

sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor.

*Hydraulic Exch. & Repair, Inc. v. KM Specialty Pumps, Inc.,* 690 N.E.2d 782, 785 (Ind.Ct.App.1998) (some citations omitted). "If the movant fails to prove even one of these requirements, the trial court's grant of an injunction is an abuse of discretion." *Titus v. Rheitone,* 758 N.E.2d 85, 91 (Ind.Ct.App.2001), *trans. denied* (2002).

Appellants contend that Dynamic Scales failed to meet its evidentiary burden with respect to all four factors. We address only the second: whether Dynamic Scales established a prima facie case that Appellants misappropriated trade secrets. Indiana Code Section 24–2–3–3(a) authorizes the injunction of actual or threatened misappropriation of trade secrets. "Misappropriation" is defined as

(1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;[5] or

(2) disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) used improper means to acquire knowledge of the trade secret;

(B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

(i) derived from or through a person who had utilized improper means to acquire it;

(ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ind.Code § 24–2–3–2.

"Trade secret" is defined as

information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; *and*

*(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.*

*Id.* (emphasis added). As the plaintiff, Dynamic Scales was required to identify the trade secrets and carry the burden of proving that they exist. *See Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.,* 759 N.E.2d 239, 245 (Ind.Ct.App.2001) (citation omitted), *trans. denied* (2002). The determination of whether information is a trade secret is heavily fact-specific. *See Amoco Prod. Co. v. Laird,* 622 N.E.2d 912, 916 (Ind.1993).

■ According to Dynamic Scales' complaint, the alleged trade secrets consist of "[t]he information contained on [its] website" and the "domain names developed, created, and maintained by and for Dynamic Scales[.]" Appellants' App. at 8. Assuming, without deciding, that that in-

---

**5.** " 'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espio-nage through electronic or other means." Ind.Code § 24–2–3–2.

formation passes the first hurdle of the statutory definition of "trade secret," we conclude that Dynamic Scales failed to establish that any efforts were made to maintain its secrecy.

With respect to the information contained on Dynamic Scales' website, John Herrmann testified as follows:

Q: [Ivan] never, I guess, proposed to you that the web site be protected so someone couldn't duplicate or copy all of your codes and protect it from that, I take it, and you refused to do that? Did that ever happen?

A: No. It didn't happen. There were certain ... *you know, you could be very secretive and we chose not to be secretive. We chose to show all our cards to our competition* so that ... it would look odd ... no one hides everything in their computer. *It's left out for the general public to see. So we chose not to hide a bunch of information.*

Tr. vol. I at 74 (emphases added).[6] The record indicates that the only relevant information that did not appear on Dynamic Scales' website was the price of its products, which Appellants are not alleged to have misappropriated. As for the domain names, there is simply no evidence that Dynamic Scales made any efforts to keep them secret. In fact, the record indicates

that Dynamic Scales intended for the domain names to be readily available to potential customers searching the internet as a means of directing them to its online retail store.

 "By definition, information is a trade secret only if it is the subject of reasonable efforts to maintain its secrecy." *Zemco Mfg., Inc.*, 759 N.E.2d at 246 (citing Ind.Code § 24–2–3–2). Here, Dynamic Scales made no efforts to maintain secrecy of the information contained on its website or its domain names.[7] Appellants might well have tampered with or infringed certain proprietary interests regarding Dynamic Scales' website and domain names, but any recovery must be pursued under a different legal theory.[8] In summary, we conclude that Dynamic Scales failed to establish a prima facie case that Appellants misappropriated trade secrets and that the trial court therefore abused its discretion in granting the preliminary injunction.[9] Accordingly, we reverse.

Reversed.

RILEY, J., and ROBB, J., concur.

---

6. We are therefore unpersuaded by Dynamic Scales' reliance on *Northern Electric Company, Inc. v. Torma*, 819 N.E.2d 417 (Ind.Ct. App.2005), *trans. pending.* In *Northern Electric*, the information compiled by the plaintiff's employee during the course of his employment was not "left out for the general public to see."

7. By way of illustration only, we note that Dynamic Scales did not restrict the availability of its product information via a password or a paid subscription to its website.

8. As we have observed in previous cases, Dynamic Scales "seems to seek to prevent com-

petition by its former agent more than it seeks to protect a trade secret." *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 876 (Ind.Ct. App.1998) (citing *Steenhoven v. College Life Ins. Co. of Am.*, 460 N.E.2d 973, 975 n. 7 (Ind.Ct.App.1984), *opinion on reh'g, trans. denied*), *trans. denied* (1999). We note that Ivan did not sign a noncompetition agreement with Dynamic Scales.

9. Consequently, we need not address Appellants' argument that the trial court erred in finding the existence of a partnership between Ivan and Michael for purposes of the preliminary injunction. We note that Michael did

not appeal the denial of his motion to dismiss and therefore remains a party to this action. Neither do we need to address Appellants' argument regarding the sufficiency of Dynamic Scales' bond.