Angel Marie COMBS by and through her Legal Guardian, Brenda Joyce Combs, et al., Appellants–Plaintiffs,

v.

Mitchell E. DANIELS, et al., Appellees–Defendants.

No. 22A01–0602–CV–70.

Court of Appeals of Indiana.

Aug. 28, 2006.

Mary Jane Lapointe, C. Abraham Murphy, McMains Lapointe, P.C., Indianapolis, IN, Attorneys for Appellants.

Steve Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellants-plaintiffs Angel Marie Combs, along with eight other students of Silvercrest Children's Development Center (Silvercrest) through their legal guardians, two Silvercrest employees, and the American Federation of State, County and Municipal Employees (collectively, "Appellants"), appeal from the trial court's denial of their request for a preliminary injunction preventing the closure of Silvercrest ordered by Governor Mitchell Daniels in conjunction with Judith Monroe, the Commissioner of the State Department of Health (ISDH) (collectively, "Commissioner"). Specifically, they raise two issues, which we consolidate and restate as whether the trial court erred in holding that the Commissioner had complete administrative authority to close Silvercrest. We affirm the judgment of the trial court.

### FACTS

Silvercrest, which is located in New Albany, was established in 1973 by Indiana Code section 16–33–3–2, as a state center for the short term-diagnostic and evaluative training of school-aged children with multiple developmental disabilities. Indiana Code section 16–33–3–3 provides that Silvercrest:

> shall provide for the educational diagnosis, evaluation, assessment, short term remediation, referral, and care of children who may benefit from such service, but who, because of serious disabling conditions, cannot make satisfactory

progress in the programs of public schools or special institutions of the state. The provision of services shall be for the purpose of properly referring these children to more appropriate programs operated by other agencies or institutions and providing reassessment of these children as indicated.

Further, "[t]he state department shall administer the center. The state health commissioner, subject to IC 20–35–2, has complete administrative control and responsibility for the center." Ind.Code § 16–33–3–4.

Silvercrest provides facility-based institutionalized services to its students, who usually stay at Silvercrest for an average of eight months. At the time that Silvercrest was established, this was considered a novel and creative approach to dealing with multiple disabilities. Since that time, social science experts have determined that community-based services are superior to facility-based services for students who have multiple disabilities. Consistent with these findings, the Commissioner has begun to implement models of community-based care to provide education and training to individuals in their home environment, instead of in institutionalized care.

In May 2005, the ISDH undertook a comprehensive evaluation of three institutions—Silvercrest, the Indiana Soldiers' and Sailors' Children's Home, and the Indiana Veterans' Home—and all programs under its auspices. The evaluators' report found that Silvercrest's services were inconsistent with modern research, that there is a disconnect between students and their family members because Silvercrest is often far from home, that there is a lack of coordinated follow-up care, and that the short-term care that Silvercrest was intended to provide often became long-term respite care. Dr. Patricia Rogan, a doctor of special education

and rehabilitation, testified that it is difficult for the students to transfer and generalize the skills and behaviors they learned at Silvercrest back to their homes. The report also found that most students discharged from Silvercrest were back in institutional settings within two years, thus providing little long-term benefit to the majority of its students. The report further concluded that Silvercrest was far more expensive than care in the community or even care at comparable institutions. The per diem cost for a child at Silvercrest was approximately $413, compared to $150 to $256 at similar programs.

On July 8, 2005, ISDH announced that there would be a freeze on admissions to Silvercrest. During this time, the Indiana Department of Education (IDOE) obtained community-based services for the nine students who sought admission to Silvercrest. On November 17, 2005, ISDH sent a letter to the legal guardians of Silvercrest students to inform them that Silvercrest would be closed after the current students were appropriately placed with the necessary support systems. On April 7, 2006, ISDH announced that it intended to close Silvercrest on May 12, 2006.

On January 3, 2006, the Appellants filed their verified complaint for an emergency preliminary injunction, requesting that the Commissioner be prohibited from implementing the plan to close Silvercrest. The trial court held a hearing on the matter on January 27, 2006. On February 15, 2006, the trial court issued its findings of fact and conclusions of law denying the Appellants' request. The trial court found no evidence of irreparable harm to any of the Appellants, that the Commissioner has "complete authority" to close Silvercrest, and that there was no restriction placed by the legislature on the administrative power of the Commissioner to close Silvercrest. Appellants' App. p. 13. Appellants now appeal.

## DISCUSSION AND DECISION

■ Appellants contend that the trial court erred in denying their request for a preliminary injunction. Specifically, they argue that they were not required to show irreparable harm because the per se rule [1] applies where statutes and the Indiana Constitution have been violated.

■ Generally, a prohibitory injunction is an extraordinary equitable remedy that should be granted with caution. *Lex, Inc. v. Bd. of Tr.*, 808 N.E.2d 104, 109 (Ind.Ct.App.2004), *trans. denied.* The plaintiffs have the burden to demonstrate that certain and irreparable injury would result if the injunction were denied. *Id.* The trial court has discretion to grant or deny an injunction, and this court will not reverse unless the trial court's ruling is arbitrary or an abuse of discretion. *Id.*

■ In seeking a preliminary injunction, the Appellants had the burden of establishing: (1) that its remedies at law are inadequate, causing irreparable harm pending resolution of its lawsuit; (2) that it has at least a reasonable likelihood of success on the merits at trial; (3) that the threatened injury to the Appellants outweighs the potential harm resulting from the proposed injunction; and (4) that the public interest would not be disserved by the granting of injunctive relief. *U.S. Land Servs., Inc. v. U.S. Surveyor, Inc.*, 826 N.E.2d 49, 63 (Ind.Ct.App.2005). Generally, Appellants would be required to prove each of the four requirements by a preponderance of the evidence, and a failure to prove even one would have made the grant of an injunction an abuse of discretion. *Paramanandam v. Herrmann*, 827 N.E.2d 1173, 1179 (Ind.Ct.App. 2005). But in this case, Appellants have asserted that the per se rule applies. Again, the per se rule says that "when the acts sought to be enjoined are unlawful, the plaintiff need not make a showing of irreparable harm or a balance of the hardship in his favor." *L.E. Servs., Inc. v. State Lottery Comm'n*, 646 N.E.2d 334, 349 (Ind.Ct.App.1995). However, the rule is properly invoked only when it is clear that a statutory violation has occurred. *Union Tp. Sch. Corp. v. State ex rel. Joyce*, 706 N.E.2d 183, 192 (Ind.Ct.App. 1998).

In this case, the appellants contend that the closure of Silvercrest violates multiple statutory provisions. Appellants point out that the chapter that contains the statute pertaining to Silvercrest is replete with mandatory language—"The Silvercrest children's development center is established as a state center," Ind.Code § 16–33–3–2, "The center shall provide ..." Ind. Code §§ 16–33–3–3, –5, –9, "the director of the center shall receive ..." Ind.Code § 16–33–3–5, a placement review committee for Silvercrest "is established" and "shall meet" on a quarterly basis, Ind.Code § 16–33–3–8.5. Therefore, Appellants argues that the closure of Silvercrest ignores the fact that these services are required to be provided by Silvercrest and not another place.

---

1. In *Clay Twp. of Hamilton County ex rel. Hagan v. Clay Twp. Reg'l Waste Dist.*, 838 N.E.2d 1054, 1063 (Ind.Ct.App.2005), this court described the per se rule as follows: [W]here the action to be enjoined is unlawful, the unlawful act constitutes per se irreparable harm for the purposes of the preliminary injunction analysis. When the per se rule is invoked, the trial court has determined that the defendant's actions have violated a statute and, thus, that the public interest is so great that the injunction should issue regardless of whether the plaintiff has actually incurred irreparable harm or whether the plaintiff will suffer greater injury than the defendant. Accordingly, invocation of the per se rule is only proper when it is clear that a statute has been violated.

Be that as it may, the Silvercrest statutes also provide, "The state health commissioner, subject to IC 20-35-2, has complete administrative control and responsibility for the center." Ind.Code § 16-33-3-4. Indiana Code chapter 20-35-2 created the division of special education, which participated in the evaluation of Silvercrest, under the IDOE. Appellants assert that "administering" Silvercrest cannot include closing Silvercrest because there would be nothing left to administer. We cannot agree, inasmuch as the administration of an estate necessitates the ultimate settlement and closing of the estate, and a partnership that gives the partners administrative control of the company could never dissolve under Appellants' interpretation. In fact, one definition of "administer" is "Execute or dispense." *The New Shorter Oxford English Dictionary* 28 (1993). The statute gives unfettered control over the administration of Silvercrest. The plain meaning of "control" is "the power or authority to manage, superintend, restrict, regulate, direct, govern, administer, or oversee," as well as the power to restrain, check, or regulate. *Williams v. State,* 253 Ind. 316, 321-22, 253 N.E.2d 242, 246 (1969). It is reasonable to understand the "administrative control" given to the Commissioner to include the authority to close Silvercrest based on the plain meaning of those words. Thus, the decision to close Silvercrest did not violate statutory law.

This conclusion is further bolstered by the fact that under similar circumstances, the General Assembly passed a law that put specific conditions on the Governor's ability to close a state facility. When Governor O'Bannon chose to close the Muscatatuck State Developmental Center, the General Assembly responded with a law that put specific conditions on the Governor's ability to do so. Ind.Code § 12-24-1-10 (repealed by P.L. 141-2006). The General Assembly also placed similar, specific controls on the Governor's ability to close the Evansville State Psychiatric Treatment Center for Children and the Evansville State Hospital. Ind.Code § 12-24-1-3(c) (repealed by P.L. 141-2006). No such conditions were placed on the ability to close Silvercrest.

■ Appellants also argue that the closure of Silvercrest violates Article 3, section 1 of the Indiana Constitution, which provides for a separation of powers among the legislative, executive, and judicial departments of our State government. Appellants contend that because the legislature is required under Article 9, section 1 of the Indiana Constitution "to provide, by law, for the support of institutions for the education of the deaf, the mute, and the blind; and for the treatment of the insane," only the legislature—not the Commissioner—has the authority to close Silvercrest.

Our Supreme Court has held that Article 9, section 1 is equivalent to an express grant of authority to provide for the selection of all such agents or officers as that body may deem necessary to accomplish the duty imposed, and it may either appoint such officers or agents itself or commit the power to do so to the Governor. *Hovey v. State ex rel. Carson,* 119 Ind. 395, 21 N.E. 21, 25 (1889). Through Indiana Code section 16-33-3-4, the General Assembly has delegated the duty of providing for the education of children with multiple disabilities to the ISDH—an agency of the executive department of government—through the Commissioner. And as we have already determined, the scope of that delegation included the authority to close Silvercrest. The General Assembly is continuing to fulfill its obligation to provide for the education of the

population who are, were, or might become students of Silvercrest through placement in community-based programs or in other residential settings. Appellees' App. p. 51, 152.

In sum, the closure of Silvercrest violates neither statutory nor constitutional law. We therefore find that the per se rule does not apply in this case. Thus, Appellants must satisfy all four prongs in order to receive a preliminary injunction.

■ The trial court found that Appellants could not show that they were likely to suffer irreparable harm if no injunction issued. Because Appellants focus their brief on the per se rule, they did not make an argument that they would suffer irreparable harm. Furthermore, the Appellants who are employees of Silvercrest may lose their jobs, but this harm is compensable with monetary damages. As for the students, we are sympathetic to the fact that this forecloses one option for their education, but the evidence confirms that community placement is superior to institutional placements because it prepares students for life in the community, whereas the students generally have difficulty transferring behaviors and skills learned in an institution into a more natural setting. Appellees' App. p. 1–74; Tr. p. 184. Appellants have not shown that they will be harmed by placement in community-based programs in lieu of placement at Silvercrest. Therefore, they have not shown that they will be irreparably harmed by the closure of Silvercrest, and the trial court did not err in denying the request for a preliminary injunction.

The judgment of the trial court is affirmed.

SULLIVAN, J., and MAY, J., concur.