



FILED
Apr 24 2025, 9:25 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

MIB, LLC, Ryan Polokoff, and Sabine Kissee,

*Appellants-Respondents*

v.

City of Noblesville and The Planning and Development Director for the City of Noblesville, Indiana,

*Appellees-Petitioners*

---

April 24, 2025

Court of Appeals Case No.
24A-PL-1893

Appeal from the Hamilton Superior Court

The Honorable Michael A. Casati, Judge

Trial Court Cause No.
29D01-2406-PL-6479

---

**Opinion by Judge Brown**
Chief Judge Altice and Judge Tavitas concur.

**Brown, Judge.**

[1] MIB, LLC, doing business as My Inner Baby ("MIB"), Ryan Polokoff, and Sabine Kissee[1] (collectively, "Respondents") appeal the trial court's entry of a preliminary injunction ordering that MIB cease its operations at a certain location in Noblesville and enjoining Respondents from reopening the business in any zoning district in Noblesville where Sex Shops are prohibited unless approved through a use variance or rezoning petition. We affirm.

## Facts and Procedural History

A. *The Director of the Department of Planning and Development*

[2] On April 26, 2022, the Director of the Department of Planning and Development (the "Director") for the City of Noblesville (the "City") issued a "Formal Determination of Impermissible Use" with respect to the use of certain property with an address on Herriman Boulevard ("Store One"). Appellants' Appendix Volume II at 139. The determination found the property is "within Noblesville City Limits" and "zoned I-1 (Light Industrial)." *Id.* The determination stated that "[t]he following definitions found in Article 2" of the United Development Ordinance ("UDO") were relevant:

> **Sex Shop** - An establishment offering goods for sale or rent and that meets any of the following tests.

---

[1] Polokoff and Kissee are members of MIB, LLC, and Polokoff is the managing member.

> 1. The establishment offers for sale items from any two of the following categories: (a) adult media, (b) lingerie, or (c) leather goods marketed or presented in context to suggest their use for sadomasochistic practices; and the combination of such items constitutes more than 10 percent of its stock in trade or occupies more than 10 percent of its floor area.
>
> 2. More than 5 percent of its stock in trade consists of *sexually oriented toys or novelties*.
>
> 3. More than 5 percent of its gross public floor area is devoted to the display of *sexually oriented toys or novelties*.
>
> **Sexually-Oriented Toys or Novelties** – Instruments, devices, or paraphernalia designed as representations of human genital organs or female breasts, or designed or marketed primarily for use to stimulate human genital organs.  ORD. #57-9-04

*Id*.  The Director's determination found: "Per the definition stated above and information the City has obtained regarding the business, I have determined that [MIB] would fall under the definition of a Sex Shop, which is not a permitted use within the I-1 zoning district."  *Id*. at 140.  It stated: "Therefore, this business should cease and desist its unpermitted operations until such time as all necessary filings or approvals are obtained."  *Id*.  MIB appealed to the City's Board of Zoning Appeals (the "BZA").

B.  *BZA Proceedings*

On August 1, 2022, the BZA held a meeting.  Counsel for MIB argued "[t]he issue here is the attempt to regulate how people use the products that are for sale, not the products themselves."  *Id*. at 176.  She argued "[j]ust because people like to dress up like babies, it doesn't mean that they use it for sexual

purposes," "[t]he bottles that they have available are used in baby showers," "[t]he same for the pacifiers as gifts to people," and "[t]his is not a sex shop." *Id*. at 177.

[4]     Counsel for the City argued that MIB met the definition of a Sex Shop under paragraphs 2 and 3 of the UDO's definition. She argued:

> [T]he inventory that they have does meet this requirement, that it is, in fact, a sex shop by definition. . . . [Y]ou have photographs of it. . . . [T]he overwhelming majority of the stuff in that store is a sex novelty. . . . After receiving complaints and conducting research, the City determined that My Inner Baby is a sex shop for the following four reasons. MIB self-markets what is called an ABDL store. It utilizes several hashtags in its social media marketing that targets individuals who knowingly look for adult baby products to use for sexual gratification. It has proudly been referenced in Hustler magazine, which is a monthly pornographic publication, and its claim that it's a medical supply company is bogus. First, ABDL stands for adult baby diaper lovers. ABDLs are a group of persons who involve themselves in childlike role playing for sexual stimulation. According to online resources, both men and women can be a DL or a diaper lover. Those persons seek pleasure by urinating and/or defecating on themselves for pleasure. The AB is an adult baby and tends to be female to provide care and nurturing to their diaper lover counterpart. Think of it very much like a mother/child relationship, but with two consenting adults. ABDL or adult baby diaper lover is openly identified as a sexual fetish on the internet. For example, Urban Dictionary defines adult baby diaper lover as a sexual fetish involving adults acting like babies and/or wearing diapers. ABDL is also known as age play and was listed in a March 21, 2018, article titled Six Unusual Fetishes and Other Surprising Trends.

* * * * *

[T]hey use hashtags such as CG, LF, L-lifestyle, which stands for caregiver/little lifestyle. It's a relationship where one person is the caregiver, and the other is a child. It is known as a BDSM relationship. BDSM stands for bondage discipline dominance and submission that may or may not involved [sic] sexual intercourse but often involves playing with childlike toys together for sexual pleasure. Another hashtag that is used in their own marketing when they are posting their photographs is hashtag DDLG. Again, this a BDSM or a bondage discipline dominance submission group that they are targeting this product for them to look at. Other hashtags that they have include DDLG baby girl, legal little, and NDLB. Each of these hashtags are included on social media accounts like Instagram and Twitter where they post pictures of their products they sell. They include these hashtags intentionally so person[s] who follow these accounts will see and, hopefully, purchase their products. . . . My Inner Baby along with other ABDL stores was recently mentioned in Hustler magazine . . . .

[M]y Inner Baby is not a medical supply shop as it claims. There are no medical conditions that require an adult to wear a onesie or suck on a bottle or pacifier to alleviate or recover from a condition or ailment. . . . For example, . . . a medical supplier here in Noblesville, supplies products such as pressure gauges, resuscitators, facemasks, intubation aids, suction pumps, arm sleeves, and catheters[,] [w]hile My Inner Baby, on the other hand, sells onesies, changing mats, pacifiers, baby bottles, bibs, and adult sized baby clothing. . . . There is no doubt that My Inner Baby is a sex shop. Is it exclusively a sex shop? Maybe not. There very well may be adults in the world who just enjoy wearing onesies, drinking from baby bottles, and walking around in diapers, but My Inner Baby is a self-marketed ABDL store. Nearly all the research online concerning the ABDL lifestyle is that it is a sexual fetish, that it[s] products are designed to stimulate sexual gratification.

*Id*. at 181-187.

[5]     Counsel for MIB argued:

> I walked every square inch of that store and its warehouse. I promise you there are . . . no female breasts, even on the dummies, and there are no paraphernalia that's designed as a representation of human genital organs or female breasts. . . . Who they choose to advertise to is protected by the United States Constitution. They have freedom of speech. They can advertise wherever they want. They do not advertise in Hustler. If Hustler chooses to include them on their publication, that's their issue, not my client's. . . .
>
> As far as medical doctors go, there's a psychiatric community that uses the term, regression, and a lot of patients who do participate in regression therapy do get prescriptions to purchase onesies and diaper covers and other implements to aid in their psychiatric treatment.

*Id*. at 189-190.

[6]     The BZA opened the floor to the public. A supplier of MIB stated "[t]hose who are sexually aroused by wearing diapers can testify as having a sexual fetish, however, that does not necessarily mean they meet the criteria for fetishistic disorder," "[d]eeming MIB as a sex shop shocks my conscious that you are trying to kill capitalism here this way," and "[i]t is a direct attack on our freedom as Americans[.]" *Id*. at 192-193. A licensed marriage and family therapist stated that her office was located across the street from MIB and "I have my own business as well and, quite frankly, with having a daycare center, a swim club, a gym, and a CAC right across the street is appalling to me." *Id*. at 193. She stated "it's a dark world and I really don't like it being right across [from] my office where I work with people who have been traumatized by

sexual abuse and this is also pedophilia, and it's part of the fetish[.]" *Id.* at 194. The executive director of a child advocacy center located across the street from the MIB location stated "the packet of information that we gave you gave you multiple definitions including from the DSM3, whether it is actually a psychological issue or not a psychological issue, we have the issue or definition that is actually listed internationally by the ABDL community itself, which does express that it is for sexual eroticism." *Id.* at 195. She also stated "I just implore you that we keep our zoning as we specifically chose this center in this location because it is near a daycare, because it is near a family friendly area in the neighborhood, and it is near an area that we don't have concerns about it being okay for kiddos to be there." *Id.*

[7] The BZA denied MIB's appeal, affirming the determination of the Director. On September 6, 2022, the BZA adopted written "Facts and Conclusions" stating that its "denial of the appeal is due to the Director's determination that My Inner Baby's use of the premises falls under the Sex Shop land use classification" and "[t]hat determination was made based upon the definition of 'Sex Shop' included in Article 2 of the [UDO]." *Id.* at 221. It further stated that it "considered the following when it denied the appeal": MIB "self-markets as an ABDL store"; MIB "uses a number of hashtags on social media and marketing posts that target individuals who knowingly look for adult baby products to use for sexual gratification"; MIB "is identified as an ABDL store including by the_abd1_map which notes that it is proud of its recognition in Hustler Magazine, a monthly pornographic magazine"; and MIB "is listed on

the web as part of other websites noting their merchandise for the ABDL lifestyle." *Id*. at 221-222.

## C. *Petition for Judicial Review*

On August 9, 2022, MIB filed a Verified Petition for Judicial Review in the Hamilton Circuit Court. On September 20, 2022, the BZA filed a motion to dismiss arguing that MIB had "not filed the agency record or sought an extension of time to file the agency record." *Id*. at 224. On October 10, 2022, the Hamilton Circuit Court granted the BZA's motion to dismiss and dismissed the case.

## D. *Federal Action*

On January 1, 2023, Respondents filed a "Complaint for Temporary Retraining [sic] Order, Injunction and Damages, and Demand for Jury Trial" in the United States District Court for the Southern District of Indiana, against the Director and members of the BZA raising counts of violations of the First Amendment, Equal Protection, Due Process, and the Commerce Clause. On August 24, 2023, the District Court found the claims were barred by the doctrine of claim preclusion and dismissed the complaint. Respondents appealed to the United States Court of Appeals for the Seventh Circuit. "Upon consideration of the Stipulation of Dismissal of Appeal, filed on January 25, 2024, by counsel for the parties," the appeal was dismissed pursuant to Federal

Rule of Appellate Procedure 42(b).[2] Appellants' Appendix Volume III at 20 (capitalization omitted).

E. *Complaint and Request for Preliminary Injunction*

On June 13, 2024, the City and Director ("Petitioners") filed a "Complaint for Declaratory Judgment and Request for Injunction" against Respondents in the Hamilton Superior Court. Appellants' Appendix Volume II at 20. The complaint alleged that MIB "reopened its Sex Shop in the exact same I-1 Zoning District in the City" and "[t]his sex shop is in direct violation of the Director's April 2022 determination." *Id*. at 21. It stated: "This is a Declaratory Judgment action to obtain declaration from this Court that MIB and its owners, Ryan Polokoff and Sabine Kissee, are prohibited from operating this, or any similar, business in any Noblesville zoning district where sex shops are prohibited (including, but not limited to, the I-1 Zoning District)." *Id*. The complaint alleged, "[o]n June 3, 2024, MIB announced it reopened its Sex Shop in Noblesville at a new location . . . Stony Creek Way, Suite 101 . . . ('Store Two')." *Id*. at 25. It alleged that "MIB's Store Two is around the corner from

---

[2] At the August 2, 2024 hearing, Petitioners' counsel stated:

> [T]he parties entered into a settlement agreement in lieu of continuing to negotiate and continuing to litigate this in front of the Sevent[h] Circuit Court of Appeals last December. Opposing counsel signed this document. It states, "Plaintiff is permitted to operate its warehouse/e-commerce facility at the RISE Commercial District located at . . . Sheridan Road Noblesville . . . ." So, in an effort to settle this case and bring finality to it, [the City] agreed to let them operate from a warehouse their e-commerce building in an effort to hopefully never be exactly where we are right now.

Transcript Volume II at 25.

the location of Store One," "Store Two is in the same industrial center where Store One was located," "Store Two is also located in an I-1 zoning district," and "MIB did not contact the City to seek a variance of use or to file a petition to rezone the property." *Id.*

On June 14, 2024, Petitioners filed a motion for a preliminary injunction requesting a hearing and an order enjoining Polokoff and Kissee "from continuing to operate MIB, LLC at . . . Stony Creek Way, Suite 101 . . . and [] order all other just and proper relief." *Id.* at 88. On August 2, 2024, the court held a hearing. Respondents' counsel moved to admit the affidavit of Polokoff as a summary of his testimony, and the court admitted the affidavit. Polokoff's affidavit stated that MIB operates a retail and e-commerce business that primarily sells adult diapers, related incontinence supplies, and adult sized clothing; "MIB's e-commerce accounts for over 80% of its gross receipts"; "[s]ince the BZA issued its Facts and Conclusions in September 2022, MIB has made several significant changes to business operations, social media activity, and its marketing"; and MIB "no longer self-markets as an ABDL store," "no longer hashtags on social media and marketing posts," and "does not note or promote its merchandise for the ABDL lifestyle." Exhibits Volume III at 125-127 (capitalization omitted). He stated that "MIB continues to meticulously review, edit and remove any self-reference, marketing references to ABDL or any other hashtags found to be offensive by the City, from its social media posts across multiple platforms, to ensure compliance with the issues raised by the BZA." *Id.* at 127. He also stated: "Store Two is which is conspicuous [sic],

uses minimal signage, exists inside a non-descript commercial space, and is not located on a main roadway." *Id*. at 128.

[12] On cross-examination of Polokoff, Petitioners' counsel asked if MIB's website "markets products designed, either designed or marketed for ABDL or DDLG lifestyle," and he answered: "No, I believe we have gone through and purged all those notes. The only exception would be the ABDL shop." Transcript Volume II at 8. When asked, "[i]f I represented to you that I printed these off on Tuesday, would you have reason to disagree with me," Polokoff testified: "Then I would tell you that we missed these keywords by way of search. But we've tasked our staff extensively with going through the entire website to make sure the keywords were removed, and we've also removed all the keywords from Google Maps. We've removed it from our social media, from Twitter, from Instagram, from Facebook. We've removed them from Tumblr." *Id*. at 9. Petitioners' counsel stated that Plaintiffs' Exhibit 1 contained "sixty different examples of how they're continuing to still market," and the court admitted the exhibit. *Id*. On redirect examination, when asked, "[t]o the best of your knowledge, do the major [sic] of these products reference ABDL . . . [o]r the ABDL hashtag in any of their marketing," Polokoff testified "[t]hey may, only by way of things that we've missed." *Id*. at 11. He testified that Respondents did not have control over any third-party websites. On re-cross examination, Petitioners' counsel asked, "This is not just about hashtags, correct? This actually says designed with ABDL and Age Players in mind. So, the product is

actually designed for that group of persons, correct?" *Id*. at 13. Polokoff answered: "That's the marketing that's on the product." *Id*.

[13] Petitioners' counsel argued "[a]t no point has the BZA's decision been overturned" and therefore "MIB is a sex shop as defined by Noblesville's UDO[.]" *Id*. at 15. She argued "[t]he only fact that has changed is MIB's address" and its "new store is minutes away and in the same zoning district." *Id*. She stated "[t]he City is asking the Court to grant it a Preliminary Injunction and if so inclined convert this to a trial on the merits[.]" *Id*. She argued "[t]he City should not . . . be forced to start over or redo any part of this case with MIB because the facts and the law have conclusively been established," "[t]he City has a strong likelihood of success on the merits of this case," and "MIB cannot operate this business in any zoning district in Noblesville where sex shops are prohibited." *Id*. She further argued:

> With respect to the testimony that we just heard it is likely to be stated in closing that they're a different business now. Cross examination just proved otherwise. They're still, these items are not just marketed. This is not just about hashtags that they were putting up on social media. These products are designed for and marketed for sexual gratification. . . .
>
> MIB's store #2 is three lots away from Cherish Center, which is a nationally accredited child advocacy group that remonstrated against MIB and provided credible testimony at the BZA hearing on this matter on August 1, 2022. MIB store #2 is also located near a youth swim center and two ballet studios. . . . MIB is a sex shop as defined by Noblesville's UDO . . . . It cannot operate this business in any zoning district in Noblesville where sex shops are not permitted. The City requests that the Court issue an injunction

ordering MIB to immediately cease all operations at the Stony Creek Way location, and also ordering MIB, Polokoff, and Kissee to not open this business in any other zoning district in Noblesville where sex shops are prohibited.

*Id.* at 16-17.

[14] Respondents' counsel argued "the City believes once we deem you a sex shop, you are always a sex shop." *Id.* at 18. He argued the BZA's decision only referenced operations at the address for Store One. He argued:

> You've heard the testimony today that we no longer use any outward marketing for ABDL or are utilizing any hashtags, the City has produced no evidence of an Instagram post or Facebook post or any other kind of outward marketing that MIB is in anyway responsible for that suggests that it is still an ABDL affiliated store. MIB no longer identifies with ABDL in any of its materials or its online advertising. It no longer references ad placements in any adult magazines, and it has moved. It's changed signage. It's . . . in a different location with different frontage, a smaller sign, and has modified its business such that there are no ABDL products that are in the store. It sells FDA regulated diapers, incontinent supplies, and clothing, that's it. It does not, in none of the City's prior decisions found that it markets any materials or any items that are actually intended for sexual gratification. This was a marketing case; this was a marketing case about one location. The location changed, the signage changed, the marketing changed, and yet we are still back here with the City trying to stop MIB from doing business. But this has nothing to do at all with the prior decision, this has everything to do with the City attempting to shut MIB down for reasons that it's never actually, for the reasons that are not actually present in the UDO.

*Id.*

In response, Petitioners' counsel argued:

> [T]he parties entered into a settlement agreement in lieu of continuing to negotiate and continuing to litigate this in front of the Sevent[h] Circuit Court of Appeals last December. Opposing counsel signed this document. It states, "Plaintiff is permitted to operate its warehouse/e-commerce facility at the RISE Commercial District located at . . . Sheridan Road Noblesville . . . ." So, in an effort to settle this case and bring finality to it, [the City] agreed to let them operate from a warehouse their e-commerce building in an effort to hopefully never be exactly where we are right now. And here we are, I don't know why they're not operating it, but they have permission to operate from that warehouse and that's what they negotiated and agreed to.

*Id*. at 25. She argued "this is a lot like Whack-A-Mole," "[w]e litigated this; we had this problem resolved," "[w]e gave you a place to operate your e-commerce building," "[t]here are zoning districts in Noblesville that you're allowed to operate," and "[y]et, you're insistent on continuing to operate in zoning districts you are not supposed to[.]" *Id*. at 26.

F. *Order of Preliminary Injunction*

On August 8, 2024, the trial court entered an "Order of Preliminary Injunction." Appellants' Appendix Volume II at 11. The court found that the Hamilton Circuit Court dismissed MIB's petition for judicial review in October 2022 and that, "[a]ccordingly, the BZA's decision to affirm the Director's determination that MIB is Sex Shop is final and conclusive." *Id*. at 13. It found "[t]he parties negotiated and agreed that MIB would be permitted to operate a warehouse/e-commerce facility at a specific location in Noblesville, IN, so long

as MIB, Polokoff, and Kissee complied with specific conditions" and "[t]he Southern District of Indiana's decision was not vacated." *Id*. at 14. It found that "MIB's Store Two is around the corner from the location of Store One," "is in the same industrial center where Store One was located," and "is also located in an I-1 zoning district." *Id*. at 15. It found that "MIB co-owner Ryan Polokoff stated all MIB business operations are currently conducted from the Store Two location." *Id*. The court found, "[b]ased on the evidence presented at the hearing, the City is likely to prevail on the merits of this action." *Id*. at 16. It found the City "established that MIB's actions are unlawful" and that "MIB has – and continues to – violate [the City's] UDO by operating a Sex Shop in an I-1 zoning district." *Id*. at 17. The court granted the City's request for a preliminary injunction, ordered that MIB immediately cease all operations at Store Two at the address on Stony Creek Way, and ordered that Respondents were "enjoined from reopening this business in any zoning district in Noblesville where Sex Shops are prohibited, unless approved through a variance of use or rezoning petition by the City." *Id*. at 18-19.

## Discussion

[17] Respondents argue the trial court abused its discretion in issuing the preliminary injunction. They assert "MIB made significant changes to its business, and ceased advertising to the ABDL community, self-marketing as an ABDL store, use of the aforementioned hashtags, and provision of its information to and association with third-party vendors who identified MIB as an ABDL store (the 'Changes')." Appellants' Brief at 12-13. They argue

"MIB's marketing was the pivotal factor supporting the BZA's denial of MIB's appeal" and, "[c]ognizant of this, when the 2022 Case was dismissed and the Determination became final, MIB ceased its objectionable marketing by implementing the Changes." *Id*. at 23. They assert: "In essence, the City's argument is that MIB's prior use of Store One is conclusive of MIB's use of Store Two. Yet the Changes show clearly that MIB's prior use of Store One and its current use of Store Two materially differ." *Id*. at 24. They contend "[t]he trial court erroneously failed to consider MIB's evidence of the Changes." *Id*. at 26. They state "the trial court seemingly concluded, once a 'Sex Shop' always a 'Sex Shop.'" *Id*. at 31. Respondents also assert that "the City's institution of an original action in the trial court in this case improperly circumvents the safeguards set up by the UDO." *Id*. at 35.

[18] Petitioners argue the trial court did not abuse its discretion in finding "that MIB's Store Two—with the same owners, same name, and same products as Store One—was a 'Sex Shop.'" Appellees' Brief at 26. They argue that Polokoff "never tried to claim that MIB is selling any different products from Store Two as it did from Store One" and "the trial court saw evidence from MIB itself that Store Two consists of exactly the same business, using the same trade name, selling the same products, and doing so in the same business park with the same zoning classification." *Id*. at 27. Petitioners maintain that "MIB's entire case—below and on appeal—hinges on a single claimed difference between the storefronts: that MIB no longer openly concedes that it caters to the ABDL community" and argue "[t]hat single claimed difference

provides no basis to reverse for two reasons": "First, the trial court could properly weigh the evidence to reject MIB's claimed difference," and "Second, MIB's marketing is not dispositive[.]" *Id*. at 28-29. In support of its first reason, Petitioners argue that MIB "marketed and sold diapers 'designed with ABDLs and Ageplayers in Mind,'" and "sold adult pacifiers 'perfect for the Adult Baby AB/DL or DD/LG!', a phrase that appears at least 44 times in the exhibit [the City] introduced." *Id*. at 28. In support of its second reason, Petitioners argue "[t]he focus of the zoning ordinance is on the *products* being retailed" and "the evidence establishing that MIB sells the same products showed that MIB *has not* changed." *Id*. at 29. They argue "[t]he nature of these products was established by the BZA in 2022[.]" *Id*. at 30.

[19] The grant or denial of a request for a preliminary injunction rests within the sound discretion of the trial court, and our review is limited to whether there was a clear abuse of that discretion. *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 171-172 (Ind. Ct. App. 2008) (citing *Ind. Family & Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 161 (Ind. 2002)). We will reverse the trial court's judgment only when it is clearly erroneous. *Id.* at 172. Findings of fact are clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We consider the evidence only in the light most favorable to the judgment and construe findings together liberally in favor of the judgment. *Id.* Further, Respondents are appealing from a negative judgment

and must therefore establish that the trial court's judgment is contrary to law. *See B&S of Fort Wayne, Inc. v. City of Fort Wayne*, 159 N.E.3d 67, 76 (Ind. Ct. App. 2020) (citations omitted), *reh'g denied*, *trans. denied*. A judgment is contrary to law only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. *Id.*

[20] To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that: (1) the movant's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the movant has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to the movant outweighs the potential harm to the nonmoving party resulting from the granting of an injunction; and (4) the public interest would not be disserved. *Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484, 487 (Ind. 2003). The difference between a preliminary and a permanent injunction is procedural. *Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc.*, 751 N.E.2d 702, 712-713 (Ind. Ct. App. 2001). A preliminary injunction is issued while an action is pending, while a permanent injunction is issued upon a final determination. *Id.* at 713. Pursuant to the "per se" injunctive standard, "when the acts sought to be enjoined are unlawful, the plaintiff need not make a showing of irreparable harm or a balance of the hardship in his favor.'" *Combs v. Daniels*, 853 N.E.2d 156, 160 (Ind. Ct. App. 2006) (quoting *L.E. Servs., Inc. v. State Lottery Comm'n*, 646 N.E.2d 334, 349 (Ind. Ct. App. 1995), *trans. denied*);

*see B&S of Fort Wayne*, 159 N.E.3d at 70-77 (trial court applied "per se" standard to City of Fort Wayne's motion for preliminary injunction based on ordinance).

[21] The record reveals that the Director issued a formal determination on April 26, 2022, finding that MIB "would fall under the definition of a Sex Shop." Appellants' Appendix Volume II at 140. The parties do not dispute that the operation of a "Sex Shop" as defined in the UDO is not a permitted use in "the I-1 zoning district." *Id*. The record further reveals that, upon MIB's appeal, the issue of whether MIB constituted a Sex Shop as defined in the UDO was presented to the BZA on August 1, 2022. As set forth above and in the record, Counsel for MIB and the City presented extensive and detailed arguments to the BZA addressing whether the products sold by MIB—including adult-sized baby clothing, pacifiers, diapers, changing mats, bibs, onesies, and bottles—constituted sexually oriented novelties. The BZA affirmed the determination of the Director that MIB constituted a Sex Shop. MIB filed a petition for judicial review, but after it did not file the agency record, the court dismissed the petition, leaving the Director and the BZA's decision undisturbed.[3]

[22] Despite the decision of the Director and the BZA, MIB began selling its products at Store Two. Store Two was "around the corner from the location of Store One," "is in the same industrial center where Store One was located,"

---

[3] As noted, Respondents thereafter filed an action in federal court and a subsequent appeal which was dismissed as the parties agreed that MIB was "permitted to operate its warehouse/e-commerce facility at the RISE Commercial District located at . . . Sheridan Road Noblesville . . . ." Transcript Volume II at 25.

and "is also located in an I-1 zoning district." *Id*. at 15. Petitioners filed the action from which this appeal arises alleging that MIB is a Sex Shop and thus its use of Store Two is not a permissive use. In granting Petitioners' motion for a preliminary injunction, the trial court found that the City is likely to prevail on the merits of its action. We agree. The court found that, as MIB's petition for judicial review was dismissed, "the BZA's decision to affirm the Director's determination that MIB is Sex Shop is final and conclusive." *Id*. at 13. Indeed, there is no dispute that MIB was a party to the proceedings before the BZA, that the fact or issue of whether MIB's use of its store space rendered it a Sex Shop as defined in the UDO was litigated before the BZA, and that the BZA's ruling was final. *See generally Miller v. Patel*, 212 N.E.3d 639, 646-647 (Ind. 2023) (a party is collaterally estopped from relitigating a claim where the same fact or issue was necessarily adjudicated in a former proceeding, there was a final judgment in the former proceeding, and the party to be estopped was a party to the former proceeding).

[23] To the extent Respondents point to Polokoff's testimony that MIB had changed its marketing practices and that these constitute new facts, we note the City presented a lengthy exhibit consisting of product descriptions from MIB's website. *See* Exhibits Volume III at 7 ("The Carousel V2 diaper was designed with ABDLs and Ageplayers in mind . . . A simple but cute design that is babyish without taking away from the simple white diaper look") (capitalization omitted); *id*. at 11-45 (appearing numerous times "These pacifiers have an oversized / adult size guard with a size 6 silicone nipple.

Perfect for the Adult Baby AB/DL or DD/LG!"). The trial court was able to weigh the evidence and determine that MIB's marketing practices had not substantially changed.

[24] Moreover, while the BZA's facts and conclusions highlighted some of MIB's marketing practices (such as its use of hashtags), it is clear that the Director and the BZA's determination that MIB constituted a Sex Shop was based on the products it sold and the conclusion that those products constituted sexually oriented novelties. Indeed, the definition of Sex Shop in the UDO refers to "sexually oriented toys or novelties," not a company's marketing practices. Appellants' Appendix Volume II at 139. MIB's products include adult-sized baby clothing, pacifiers, diapers, changing mats, bibs, onesies, and bottles. The references by Petitioners' counsel to MIB's online and social media presence were made to show that MIB's products constituted sexually oriented novelties. The court found that, without a variance of use or rezoning, MIB is prohibited from operating in an I-1 zoning district or any other zoning district where Sex Shops are prohibited, but that, pursuant to the settlement agreement in the Federal case, MIB is still permitted to operate an e-commerce facility at the specific location in Noblesville where the parties agreed so long as Respondents comply with certain conditions.

[25] We conclude, as did the trial court, that Petitioners have shown they have at least a reasonable likelihood of success at trial by establishing a prima facie case. As Petitioners have shown a reasonable likelihood that MIB is in violation of the City's ordinance, pursuant to the "per se" injunctive standard

they "need not make a showing of irreparable harm or a balance of the hardship" in their favor. *See Combs*, 853 N.E.2d at 160. The trial court found that, even without the "per se" standard, the City lacks an adequate remedy at law, monetary damages cannot compensate the harm caused to the City and its constituents who rely on fair and consistent enforcement of zoning regulations, and months after settling the case, MIB reopened its business in the same zoning district where Store One was located. The court found the balance of harms also favors the issuance of injunctive relief. MIB, in opening Store Two, disregarded the ordinance prohibiting the operation of a Sex Shop in an I-1 zoning district. MIB is permitted to operate an e-commerce facility at the location to which the parties agreed where it can continue its online business. Petitioners also demonstrated that the public interest would not be disserved by the injunction. Store Two is around the corner from Store One and in the same industrial center near a marriage and family therapist's office, a daycare center, a swim club, a gym, and a child advocacy center. Our review of the record does not leave us with a firm conviction that a mistake has been made, and we cannot conclude that the evidence in the record leads unerringly to a conclusion opposite that reached by the trial court.

[26] For the foregoing reasons, we affirm the trial court's Order of Preliminary Injunction.

[27] Affirmed.

Altice, C.J., and Tavitas, J., concur.

ATTORNEYS FOR APPELLANTS

Lonnie D. Johnson
Justin K. Schwemmer
Robert D. Esrock
Clendening Johnson & Bohrer, P.C.
Bloomington, Indiana


ATTORNEYS FOR APPELLEES

Vivek R. Hadley
Donald E. Morgan
Beth Copeland
Taft Stettinius & Hollister LLP
Indianapolis, Indiana